UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRADLEY VAN PATTEN, an individual, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>VERTICAL FITNESS GROUP, LLC, etc.,<br><br>Defendants. | CASE NO. 12cv1614-LAB (MDD)<br><br>**ORDER GRANTING LEAVE TO AMEND COMPLAINT** |

This putative class action accuses Vertical Fitness of sending unsolicited promotional text messages to consumers, in violation of the federal Telephone Consumer Protection Act and California's Business and Professions Code. Van Patten's original complaint, which he filed on June 28, 2012, alleges that he received just one unlawful text. (Compl. ¶ 17.) He now seeks to amend his complaint to add two more.

I.   **Legal Standard**

Under Rule 15 of the Federal Rules of Civil Procedure, once a defendant has answered a complaint a plaintiff may amend it only with the defendant's consent or the court's leave. "The Court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and "this policy is to be applied with extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Leave shouldn't be granted

automatically, though; the decision rests in the Court's discretion. *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002); *Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1331 (9th Cir. 1996).

There are five factors to consider here: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; (5) whether the plaintiff has previously amended the complaint. *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). It's really the prejudice factor that's the most important, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), but even absent prejudice a strong showing on the other factors may be grounds for denying leave to amend. *Id.*

## II.  Discussion

As the Court reads Van Patten's complaint, he originally alleged that he received a single text from Vertical Fitness:

> For instance, in or about June of 2012, Vertical Fitness and/or their authorized agents, vendors, contractors, or marketing partners, used an automatic telephone dialing system to make spam commercial text message calls to cell phone users, including a text message to plaintiff Bradley Van Patten's cellular telephone. (Compl. ¶ 17.)

Vertical Fitness essentially conceded this in a response to Van Patten's interrogatories on February 15, 2013, albeit over an objection to the interrogatory:

> Interrogatory No. 3: Identify the number of text message campaign efforts which were taken.
>
> Response to Interrogatory No. 3: Responding Party is informed, and therefore believes that in June 2012, Advecor, Inc. sent a single text message blast to 30,354 phone numbers pursuant to its aforementioned contractual obligations. This text message blast was sent only to the phone numbers of former gym members. This single text message blast was the one and only time anyone—including, but not limited to third-party contractors such as Advecor, Inc.—ever sent a text message advertisement on Vertical's behalf. (Rikos Decl., Ex. 3, Doc. No. 21-2 at 35.)[1]

---

[1] To be precise, this admission was made in Vertical Fitness's "First Supplemental Responses to Plaintiff's First Set of Interrogatories." In its original response on January 22, 2013, Vertical Fitness simply objected to the interrogatory and said no more. (Rikos Decl., Ex. 2, Doc. No. 21-2 at 15–16.)

But on May 6, 2013, counsel for Vertical Fitness emailed Van Patten's counsel about various discovery issues, and in his email he indicated that more than one text was sent:

> We intend to file supplemental and/or amended responses to your discovery requests to address newly discovered information. For instance, until last week, it was Vertical's understanding that only one text message blast had been sent. It seems that that was your understanding as well, based upon your pleadings and some of your discovery requests. However, it now seems that there may have been two text blasts, and we intend to update our responses accordingly. (Rikos Decl., Ex. 4, Doc. No. 21-2 at 39.)

Van Patten's motion could be a bit more clear on exactly how and when he learned of the additional two texts, but as the Court understands him: (1) it wasn't until Vertical Fitness's February 15 supplemental responses to his interrogatories that he even learned of Advecor's involvement in the texting; and (2) after follow-up discovery and depositions in late April and early May the additional texts were discovered—one on May 14, 2012 and another on June 25, 2012.[2] (Mot. at 6–7; Reply Br. at 2–3.) Or, at least one text was discovered then, while another was discovered when Van Patten responded to Vertical Fitness's discovery requests. (*See* Reply Br. at 6.)

Vertical Fitness tries to argue that Van Patten's own response to interrogatories shows he already knew of the texts, but the actual response—"The responding party received a text message on May 14, 2012 and June 25, 2012"—was dated April 23, 2013, around the time that Van Patten claims to have gotten the full story from Advecor. (Ellis Decl., Ex. E, Doc. No. 24-3 at 4.) Vertical Fitness's better argument, which it does make, is that Van Patten simply isn't being forthcoming here, because documents *he produced* to Vertical Fitness suggest he didn't need additional discovery to know how many texts from Vertical Fitness he received. One document is a screen-shot of his cell phone with two text messages appearing, the first on May 14, 2012 and the second on June 25, 2012. (*See* Ellis Decl., Ex. F, Doc. No. 24-3 at 8.) Another is cell phone records that show both texts. (*See* Ellis Decl., Ex. G, Doc. No. 24-3 at 11–12.). More than that, when Van Patten was deposed

---

[2] Vertical Fitness's opposition brief makes clear that texts were sent to *former* members on May 14 and June 25, and single text was sent to *current* members also on June 25. (Opp'n Br. at 3.)

after he sought leave to amend his complaint, he admitted that he knew of the May text message sometime in 2012.

> Question: [D]o you know why there's no reference to the May 2012 text message [in the complaint]?
>
> Answer: To my recollection, I noticed this one of June of 2012 first, before the May 14th one.
>
> Question: Well, when did you first realize that you had received a text message in May of 2012?
>
> Answer: I don't recall.
>
> Question: Okay. Was it in the year 2012?
>
> Answer: Yes.
>
> Question: Okay. And - - all right. As class representative, you brought that to the attention of your attorneys?
>
> Answer: Yes. (Ellis Decl., Ex. I, Doc. No. 24-3 at 22–23.)

In light of documents he produced *and* his own testimony, Vertical Fitness insists that Van Patten knew of all texts (or at least two of them) in 2012, and that he concealed this knowledge in bad faith for strategic reasons, namely, "to trap Vertical into giving prejudicially erroneous responses to discovery." (Opp'n Br. at 8.)

The Court just sees sloppy lawyering, however, not necessarily bad faith or delay tactics. Vertical Fitness is right—seeking leave to amend a complaint two days before the cutoff date for class certification discovery, and after a motion for class certification has already been filed—isn't exemplary conduct. On the other hand, the Court doesn't foresee any major kink in this case, or prejudice to Vertical Fitness, by allowing Van Patten to amend his complaint. The class certification analysis won't change much, if at all[3], and to the extent additional discovery must be taken it will be minimal. No other substantive motions have been filed. Also, while it's not the most compelling explanation, Van Patten does offer that

---

[3] It's still unclear to the Court whether Van Patten received all three texts at issue, and there may be an argument on class certification that as lead plaintiff he must have—assuming the texts really give rise to distinct claims. *See Valentino v. Carter-Wallace*, 87 F.3d 1227, 1234 (9th Cir. 1996); *In re: N. Dist. of Cal. Dalkon Shield IUD Products Liab. Litig.*, 693 F.2d 847, 855 (9th Cir. 1982). The Court merely flags this as a potential issue; it doesn't purport to have an answer to it right now.

he never recognized the texts he received to be distinct, considering they came from the same number and were virtually identical. Finally, the Court isn't convinced that the original complaint mentions only a single text. Here is the complaint language, again:

> For instance, in or about June of 2012, Vertical Fitness and/or their authorized agents, vendors, contractors, or marketing partners, used an automatic telephone dialing system to make spam commercial text message calls to cell phone users, including a text message to plaintiff Bradley Van Patten's cellular telephone.

It's actually ambiguous whether the phrase "text message calls" refers to a single text that was sent to multiple recipients, or multiple texts that were sent to multiple recipients, especially considering that the multiple texts at issue now are more or less identical. Maybe the strictest reading of the complaint is that Van Patten received a single text, but it's not an implausible reading that in or about June of 2012—which arguably includes May of 2012—Van Patten received text messages, *plural*, from Vertical Fitness.[4]

### III. Conclusion

Van Patten's motion for leave to amend his complaint is **GRANTED**. He shall file his amended complaint within one week of the date this Order is entered. If the parties feel that

//
//
//
//

---

[4] The Court has also considered some of the cases cited by Vertical Fitness denying a plaintiff's leave to amend and doesn't find that the circumstances of this case are comparable. *See AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 953 (9th Cir. 2006); *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999); *Solomon v. North American Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998); and *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). For example, the plaintiff in *Lockheed* sought to amend its complaint to assert new legal claims months after a stipulated deadline for doing so, and the amendments would have required a substantial reopening of discovery. On top of that, the amendments were sought in the face of a summary judgment motion, which led the district court to suspect bad faith, *and* the amendments may have been futile because no court had recognized the claim the plaintiff wanted to add. *See Lockheed*, 194 F.3d at 986. In *Solomon*, the plaintiff sought to add a claim that the district court found it couldn't even state on the facts alleged. *Solomon*, 151 F.3d at 1138.

an amended motion for class certification is necessary, or an amended briefing schedule on the motion that is now pending, they may file the appropriate motion.

**IT IS SO ORDERED**.

DATED: July 17, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge