1  Mark E. Ellis – 127159
   Andrew M. Steinheimer – 200524
2  Brandon L. Reeves – 242897
   Ephraim Egan – 278122
3  ELLIS LAW GROUP, LLP
   740 University Avenue, Suite 100
4  Sacramento, CA  95825
   Tel: (916) 283-8820
5  Fax: (916) 283-8821
   mellis@ellislawgrp.com
6  asteinheimer@ellislawgrp.com
   breeves@ellislawgrp.com
7  eegan@ellislawgrp.com

8  Attorneys for Defendant VERTICAL FITNESS GROUP, LLC

9

10                 UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12

13  BRADLEY VAN PATTEN, an individual,      Case No.:  3:12-CV-01614-LAB-MDD
    on behalf of himself and all others
14  similarly situated,                      **DEFENDANT VERTICAL FITNESS
                                             GROUP, LLC'S MEMORANDUM OF
15          PLAINTIFF,                        POINTS AND AUTHORITIES IN
                                             SUPPORT OF MOTION FOR
16  v.                                       SUMMARY JUDGMENT, OR
                                             ALTERNATIVELY, PARTIAL
17  VERTICAL FITNESS GROUP, LLC, a           SUMMARY JUDGMENT [FRCP 56]**
    limited liability company; ADVECOR,
18  INC., a California Corporation,          DATE: November 4, 2013
                                             TIME:  11:30 a.m.
19          DEFENDANTS.                       CRTRM: 9, 2nd Floor

20                                           Hon. Larry Alan Burns

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

I.    INTRODUCTION ................................................................................ 1

II.   STATEMENT OF FACTS .................................................................... 4

III.  THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA") ..................... 7

    A.   The Primary Purpose Of The TCPA Was To Regulate Advertising
    By Phone And Fax Telemarketers Who Passed Part Of Their Costs
    To The Recipients. ................................................................... 7

        1.   Congress Sought To Minimize "Random" Calls Tying Up
        Private Phone Lines. .......................................................... 7

        2.   Telemarketing Calls Were Considered An Invasion Of Privacy. ..... 8

        3.   The TCPA Was Also Intended To Eliminate The Shifting Of
        Advertising Costs To Recipients Of The Calls. ........................ 8

        4.   The TCPA Was Not Intended To Apply To Lawful Solicitations
        or Calls Made With Prior Express Consent. ........................... 8

    B.   The Provisions Of The TCPA Relevant To The Instant Case ................ 9

IV.  LEGAL ARGUMENT ........................................................................ 10

    A.   Standard For Summary Judgment. ............................................. 10

    B.   Van Patten's First Cause Of Action Under the TCPA Is Subject to
    Partial Summary Judgment. ...................................................... 10

        1.   Van Patten Provided Prior Express Consent To Be Contacted
        On His Cell Phone. ........................................................... 10

        2.   Van Patten's TCPA Cause Of Action Also Fails Because
        Vertical Fitness Cannot Be Held Vicariously Liable For The
        Actions Of Advecor ........................................................... 14

    C.   Van Patten's Second Cause Of Action For Violation Of Business &
    Professions Code Section 17538.41 Fails As A Matter Of Law
    Because Vertical Fitness Does Not Conduct Business in California ......... 18

    D.   Van Patten's Third Cause Of Action Under The Unfair Competition
    Law, Business & Professions Code Section 17200, Fails Because
    Vertical Fitness Did Not Engage In Any Unlawful Or Unfair
    Conduct, And Van Patten Did Not Suffer An "Injury In Fact." ............... 19

        1.   There Are No Facts That Show Vertical Fitness Committed
        "Unlawful" Or "Unfair" Business Practices. ......................... 19

- i -

2.    Van Patten's UCL Cause Of Action Also Fails Because He Did Not Suffer An "Injury In Fact" Or Lose "Money Or Property" As Required By Business and Professions Code Section 17204. ................................................................... 20

V.    CONCLUSION ................................................................................. 22

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT [FRCP 56]

TABLE OF AUTHORITIES

PAGE

**Cases**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)................................. 10

Barnhart v. Sigmon Coal Co., Inc., 534 U.S. 438 (2002) ..................................... 15, 16

Boorstein v. Men's Journal LLC, 2012 WL 2152815 (C.D. Cal. 2012)..................... 20

Brinson v. Linda Rose Joint Venture, 53 F.3d 1044 (9th Cir. 1995).......................... 10

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)............................................ 10

Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,
   467 U.S. 837 (1984)............................................................ 17

Connelly v. Hilton, 2012 WL 2129364 (S.D. Cal. 2012).................................. 2, 13, 14

Corley v. U.S., 556 U.S. 303 (2009) ..................................................... 15

Emanuel v. Los Angeles Lakers, Inc., 2013 WL 1719035 (C.D. Cal. 2013).... 2, 12, 13

Farmers Ins. Exchange v. Superior Court, 2 Cal.4th 377 (1992) ........................ 19, 20

In re Sony Gaming Networks and Customer Data Sec. Breach
   Litigation, 903 F.Supp.2d 942 (S.D. Cal. 2012)........................................ 21

Kwikset Corp. v. Superior Court, 51 Cal.4th 310 (2011) ........................ 3, 20, 21, 22

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990)................................ 10

Mais v. Gulf Coast Collection Bureau, Inc., 2013 WL 1899616
   (S.D. Fla. 2013)......................................................... 2, 3, 16, 17, 18

Marzette v. Provident Sav. Bank, F.S.B., 2011 WL 5513682
   (E.D. Cal. 2011)............................................................ 21

Mey v. Pinnacle Sec., LLC, 2012 WL 4009718 (N.D. W.Va. 2012) ......................... 16

Meyer v. Holley, 537 U.S. 280 (2003)................................................. 16

Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036
   (9th Cir. 2012).......................................................... 1, 9, 12, 14

Mims v. Arrow Financial Services, LLC, 132 S.Ct. 740 (2012).............................. 10

Osorio v. State Farm Bank, F.S.B., 859 F.Supp.2d 1326 (S.D. Fla. 2012)................. 10

Pimental v. Google Inc., 2012 WL 691784 (N.D. Cal 2012) ......................... 13

Pinkard v. Wal-Mart Stores, Inc., 2012 WL 5511039
   (N.D. Ala. 2012) ..................................................... 11, 12, 13, 14

**Renick v. Dun & Bradstreet Receivable Mgmt. Servs.,**
290 F.3d 1055 (9th Cir. 2002) ................................................................. 3, 20

**Roberts v. PayPal, Inc.** 2013 WL 2384242 (N.D. Cal. 2013) ...................................... 12

**Russello v. U.S.,** 464 U.S. 16 (1983)................................................................. 15, 16

**Satterfield v. Simon & Schuster, Inc.,** 569 F.3d 946 (9th Cir. 2009)........................ 1, 9

**Thomas v. Taco Bell Corp.,** 879 F.Supp.2d 1079 (C.D. Cal. 2012) ........................... 16

**U.S. v. Gonzales,** 520 U.S. 1 (1997) .................................................................. 15

**Statutes**

**Federal**

47 U.S.C. § 227 ...........................................................................................7

47 U.S.C. § 227(b)(1)(A) ....................................................................... 9, 10, 15

47 U.S.C. § 227(b)(2)........................................................................... 1, 11

47 U.S.C. § 227(c)(5) .............................................................................. 15

**State of California**

Business & Professions Code § 17200....................................................... 19

Business & Professions Code § 17204....................................................... 3, 20

Business & Professions Code § 17538.41................................................... 3, 18

**Other Authorities**

Assem. Bill No. 582 (2005-2006 Reg. Sess.) § 711 ....................................... 18

Congressional Record – Senate Proceedings and Debates of the 102nd
Congress First Session, July 11, 1991, 137 Cong. Rec. S9840-02...................8

Federal Communications Commission Regulations, 77 Fed.Reg. 34233
(June 11, 2012)........................................................................................ 11

Federal Communications Commission Regulations, 77 Fed.Reg. 63240
(Oct. 16, 2012) ..................................................................................... 11

House Report No. 102-317, November 15, 1991, 1991 WL 245201 .....................9

In the Matter of The Joint Petition Filed By Dish Network, LLC, The United
States of America, and The States of California, Illinois, North Carolina, and
Ohio for Declaratory Ruling Concerning The Telephone Consumer Protection
Act Rules, 28 FCC Rcd. 6574 (May 9, 2013) ............................................. 17

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of
1991, 7 FCC Rcd. 8752 (Oct. 16, 1992).......................................... 2, 10, 11, 12, 14

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT [FRCP 56]

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014 (July 3, 2003) ............................................................. 1, 9

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559 (Jan. 4, 2008) ............................................................. 11, 17

In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 27 FCC Rcd. 1830 (Feb. 15, 2012) ............................................................. 11

Senate Report No. 102-178, October 8, 1991, 1991 U.S.C.C.A.N. 1968 ................. 7, 8, 9

**Rules**

Federal Rule of Civil Procedure 56 .............................................................. 1, 10

# I.   **INTRODUCTION**

Defendant Vertical Fitness Group, LLC ("Vertical Fitness") hereby moves this Court for an order granting it summary judgment, or alternatively, partial summary judgment, against Plaintiff Bradley Van Patten. **Fed. Rule Civ. Proc. 56**. Summary judgment is appropriate because the undisputed facts demonstrate Van Patten is not entitled to any relief from Vertical Fitness as a matter of law.

Van Patten's First Amended Complaint ("FAC") (Dkt. #28) alleges three causes of action arising from his receipt of two text messages in May and June of 2012, as follows:

(1) violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. section 227(b)(1)(A)(iii);

(2) violation of California Business and Professions Code section 17538.41; and

(3) violation of Business and Professions Code section 17200 *et seq*.

Vertical Fitness's motion should be granted on each of these claims, and on Vertical Fitness's first affirmative defense of "prior express consent," for the following reasons:

**First**, Van Patten's first cause of action for violation of the TCPA should be dismissed because he cannot show the absence of "prior express consent" to receive communications from Vertical Fitness on his cell phone.[1]  Lack of prior express consent is either an element of a TCPA claim or, in the alternative, an affirmative defense. **Meyer v. Portfolio Recovery Associates, LLC**, 707 F.3d 1036, 1043 (9th Cir. 2012) (lack of prior express consent is an essential element of the claim); **Connelly v. Hilton**,

---

[1] The TCPA does not define a "call." Nevertheless, the FCC has noted that the term "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls," *i.e.*, text messages. **Declaration of Mark E. Ellis in support of this motion, Exh. 9, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991**, 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003) (hereinafter "2003 FCC Order").  Congress has delegated authority to the FCC to make rules and regulations to enforce the TCPA under 47 U.S.C. § 227(b)(2).  The Ninth Circuit subsequently has found the definition set forth in the 2003 FCC Order reasonable and confirmed that "a text message is a 'call' within the TCPA." **Satterfield v. Simon & Schuster, Inc.**, 569 F.3d 946, 954 (9th Cir. 2009).

1

1  2012 WL 2129364, *3 (S.D. Cal. 2012) ("[w]hether Plaintiffs gave the required prior

2  express consent is an affirmative defense to be raised and proved by a TCPA

3  defendant…").

4        Whether prior express consent is a prima facie element of a TCPA claim, or an

5  affirmative defense, the result here is the same; it is undisputed that Van Patten

6  voluntarily provided Vertical Fitness with his cell phone number at the time he joined

7  Vertical Fitness's gym, and by doing so he consented to receive telephone calls and text

8  messages from Vertical Fitness at that number.  *See* **Declaration of Mark E. Ellis in**

9  **support of this motion, Exh. 8, In re Rules and Regulations Implementing the**

10  **Telephone Consumer Protection Act of 1991**, 7 FCC Rcd. 8752, 8769 ¶ 31 (Oct. 16,

11  1992) ("1992 FCC Order") ("persons who knowingly release the phone number have in

12  effect given their invitation or permission to be called at the number which they have

13  given, absent instructions to the contrary") [2]; **Emanuel v. Los Angeles Lakers, Inc.**,

14  2013 WL 1719035, *3 (C.D. Cal. 2013) (same).  Thus Vertical Fitness is entitled to

15  summary judgment as to Van Patten's TCPA claim, as he either cannot establish an

16  essential element of his claim or alternatively, a complete affirmative defense bars his

17  claim.

18        **Second**, to the extent any violation of the TCPA occurred, Vertical Fitness cannot

19  be held responsible for the text messages Van Patten received.  The plain language of

20  the TCPA does not permit vicarious liability; under a plain reading of the statutory

21  language, TCPA liability exists only for the person or entity who "makes" the call.  *See*

22  **Mais v. Gulf Coast Collection Bureau, Inc.**, 2013 WL 1899616, at *13 (S.D. Fla.

23  2013) (courts should "employ the statute as written and find that only those who make

24  calls in violation of section 227(b)(1)(A) may be held liable").

25        The evidence here is undisputed that Vertical did not "make" the communications

26  in question.  Rather, defendant Advecor sent the two text messages upon which Van

27

[2] All further references to exhibits herein are to the exhibits attached to the declaration
28  of Mark E. Ellis unless otherwise noted.

2

1  Patten's complaint is based; and Advecor possessed complete control over how the

2  messages were sent, not Vertical Fitness. (*See* **Exh. 4**, pp. 16:3-21, 18:7-19:3 [Vertical

3  Fitness CEO Jon Barton testimony confirming that Advecor sent the messages].)

4  Because Van Patten cannot show that Vertical Fitness made any call or sent any text

5  message in violation of the TCPA, Vertical is entitled to partial summary judgment on

6  the TCPA claim. **Mais**, *supra*, 2013 WL 1899616, at *13.

7       **Third**, Van Patten's second claim for relief fails because California Business and

8  Professions Code section 17538.41 only applies to an "entity conducting business…in

9  this state." Cal. Bus. & Prof. Code § 17538.41. It is undisputed that Vertical Fitness

10  only conducts business in Wisconsin and Minnesota. (**Exh. 4**, p. 16:16-19 ["we only do

11  business in Minnesota and Wisconsin"].) Since section 17538.41 only applies to

12  entities located in California who conduct business solely in California, and because

13  Van Patten cannot show that Vertical Fitness ever conducted business in California,

14  Vertical Fitness is entitled to summary judgment on the second claim for relief.

15       **Fourth**, Van Patten's third claim for violation of California's Unfair Competition

16  Law ("UCL") fails as a matter of law if the Court dismisses his first and second claims

17  for violation of the TCPA and Business and Professions Code section 17538.41. This is

18  because Van Patten's UCL claim is predicated on violations of other statutes. Where

19  the predicate statute was not violated, no unlawful business practices could have

20  occurred. *See* **Renick v. Dun & Bradstreet Receivable Mgmt. Servs.**, 290 F.3d 1055,

21  1058 (9th Cir. 2002) (dismissing UCL claim where the claim hinged on an alleged

22  violation of the FDCPA, which was shown not to be violated).

23       **Fifth**, Van Patten's third claim for violation of the UCL is also subject to partial

24  summary judgment for another reason. Van Patten has not suffered an injury in fact or

25  lost money or property as a result of the alleged conduct. *See* Cal. Bus. & Prof. Code §

26  17204 (UCL standing is only conferred upon "a person who has suffered injury in fact

27  and has lost money or property as a result of the unfair competition"); **Kwikset Corp. v.**

28  **Superior Court**, 51 Cal.4th 310, 323 (2011) ("The plain import of this [referring to

1   section 17204] is that a plaintiff now must demonstrate some form of economic

2   injury.")  Since Van Patten was admittedly not charged anything extra on his pre-paid

3   cell phone plan for the two messages he received, he cannot show an economic injury as

4   a result of defendants' conduct.  (*See* **Exh. 2**, p. 76:8-18.)

5        For these and other reasons set forth below, this motion for summary judgment

6   should be granted in its entirety (or in part) and judgment entered in Vertical Fitness's

7   favor.

8                    **II.    STATEMENT OF FACTS**

9        The facts are quite simple.

10       In 2009, Mr. Bradley Van Patten resided in Wisconsin in or near the city of Green

11  Bay. (**Exh. 2**, at p. 105:17-22.)  On March 21, 2009, he visited a Gold's Gym franchise

12  in Green Bay. (**Exh. 2**, at pp. 104:20-105:11; **Exh. 1**, Gold's Gym Membership

13  Agreement, p. 1.)  He was "prequalified." This meant he personally wrote down his

14  demographic, financial and contact information. (**Exh. 2**, at p. 124:11-22; **Exh. 3**, at pp.

15  45:20-46:1, 47:9-49:2, 56:22-58:16.)

16       After this "prequalification" process," a contract was filled out for him by gym

17  employee, Amy Berggren, from the information Van Patten had previously provided

18  and from questions she asked him about his demographic, financial, and contact

19  information.  (**Exh. 2**, at pp. 103:16-108:9, 117:1-118:16, 121:18-125:18; **Exh. 3**, at pp.

20  42:11-44:23, 51:5-15, 54:9-18, 56:22-58:16, 59:22-61:7, 84:15-90:16.)

21       Van Patten provided his cell phone number as his "contact" number.  (**Exh. 1**;

22  **Exh. 2**, at pp. 117:1-6, 124:11-125:18.)  No other contact number was provided by Van

23  Patten.

24       Significantly, no restrictions were given by Van Patten on how his number could

25  be used by the franchise. (**Exh. 1**.)  Ms. Berggren and Vertical Fitness CEO Jon Barton

26  both testified that the gym possessed an invariable policy and practice of noting any

27  restrictions on calling the numbers provided on the contracts – if any were proffered by

28  a potential member. (**Exh. 3**, at pp. 84:15-88:2, 96:14-97:2; **Exh. 4**, at pp. 76:19-77:10,

4

---

176:18-178:4.)

Van Patten admits he entered into a gym membership contract with this Gold's Gym franchise, and he admits he put nothing on his contract to indicate the number he provided was a cell phone number, as opposed to a residential or landline number. (**Exh. 2,** pp. 107:23-108:7, 117:1-7 ["There's nothing that says cell phone number"], 121:18-123:10.) He admits he has no recollection of what was said much less putting any restrictions on the use of his phone number. *Id.*

In the spring of 2012, the common owners of several Gold's Gym franchises, including the gym that Van Patten joined, reached an agreement with Gold's Gym to "de-identify" as Gold's Gyms, and to become their own "brand." (**Exh. 4,** pp. 32:20-23, 40:3-7, 46:2-48:15.)  As such, in May 2012, these former Gold's Gym franchises were renamed and rebranded as "Xperience Fitness" gyms.  (*Id.,* pp. 40:3-7, 46:2-48:15.) Vertical Fitness Group, LLC owns several of the rebranded gyms and is the owner of the "Xperience Fitness" brand. (*Id.,* p. 48:1-11.)  During the rebranding, however, the ownership of each gym did not change.  (**Exh. 4,** pp. 46:7-13, 48:5-13.)  Only the names of the gyms changed. (*Id.*)  For example, the gym in Green Bay that Van Patten joined continued to be owned by Green Bay Fitness, LLC.  (*Id.,* pp. 225:21-226:11.)[3]

Vertical Fitness retained Advecor, an advertising company, to assist it in announcing to current and former gym members that the former Gold's Gyms were becoming Xperience Fitness gyms.  (**Exh. 4,** pp. 6:16-23, 8:7-11, 40:3-21, 46:2-13.) Advecor's sales and marketing representatives developed an informational and advertising campaign that involved direct mail, radio, and other marketing methods. (*Id.,* pp. 8:7-11, 11:1-3, 17:5-18:6; **Exh. 5,** pp. 24:23-28:10.)  One small part of the campaign involved sending informational text messages to current and former members. (**Exh. 4,** pp. 10:12-15, 67:11-16, 155:16-19.)  Vertical Fitness CEO John Barton

---

[3] Green Bay Fitness, LLC's sole owner is Fox River Fitness, LLC.  (**Exh. 4,** p. 37:16-18.)  Three of the four owners of Fox River Fitness, LLC (Barton, Nelson, and Davidson) are the sole owners of Vertical Fitness, LLC which owns the "Xperience Fitness" brand.  (*Id.,* pp. 37:19-38:6, 47:17-23, 108:21-109:4.)

5

1   approved the messages for grammar and to ensure the "price point" of the monthly dues

2   was accurate (*Id.*, pp. 15:22-25, 42:15-43:4). But Advecor, an independent contractor,

3   developed and was responsible for sending the messages. (*Id.*, pp. 16:3-21, 17:5-20:1,

4   21:16-23, 23:21-24, 67:11-70:25, 136:13-137:12, 162:14-163:1, 221:1-21.)

5       Advecor recommended that current and former members be contacted by text

6   message. (*Id.*, p. 17:10-14.) Vertical accepted that recommendation, but did not

7   participate in sending the messages.

8       Indeed, as late as May 2013, Vertical Fitness believed only one text message had

9   been sent by Advecor. (**Exh. 4,** pp. 15:22-16:21, 219:17-220:7.)  Apparently, a total of

10  three text messages were in fact sent by Advecor.  Two messages were sent, one on

11  May 14, 2012, and one on June 25, 2012 to former members. One message was sent on

12  June 25, 2012 to current members.  (**Exh. 5,** pp. 31:16-34:2, 107:12-15.)

13      Advecor in turn employed "CallFire," which was an internet-based company, to

14  send the messages to current and former members.  (**Exh. 5,** pp. 84:14-86:6, 108:7-19,

15  113:14-21.)  An Excel spreadsheet containing former and current member phone

16  numbers along with the contents of the text message were uploaded by Advecor to the

17  CallFire server. (*Id.,* pp. 82:13-86:6, 107:21-108:4, 114:11-16, 119:7-120:8, 129:16-

18  132:7.)  A predetermined time was set for when the messages were to be sent.  (*Id.*, pp.

19  120:16-122:10.)  No dialing technology was apparently used to "dial" any numbers.

20  (*Id.*, pp. 246:17-248:12.)

21      Van Patten received the two texts addressed to former members on May 14, 2012

22  and June 25, 2012. (**Exh. 2,** p. 94:16-19.)  The text messages informed Van Patten of

23  the name change, a chance to win a Nissan Xterra, and extended an offer to come back

24  to the gym.  (**Exh. 7,** Screenshot of Text Messages.)

25      Van Patten was not charged for either of these text messages. (**Exh. 2,** pp. 61:20-

26  73:22, 75:16-76:18; **Exh. 6,** Phone Records of Van Patten of May 14, 2012 and June 25,

27  2012, pp. 15 and 27.) He admits he suffered no actual injury. (**Exh. 2,** pp. 76:8-18,

28  95:11-23, 103:3-10.)

1   Vertical Fitness gyms are located **_only_** in Wisconsin and Minnesota; Vertical

2   Fitness does not do business in California and it never has.  (**Exh. 2**, p. 97:1-6; **Exh. 4**,

3   pp. 16:16-19, 215:9-216:15, 224:2-15; **Exh. 5**, pp. 249:7-251:3.)  The text reached Van

4   Patten in California only because he had moved to California, but retained his

5   Wisconsin cellphone number.  (**Exh. 2**, pp. 12:8-9, 19:8-12, 29:21-31:4; **Exh. 4**, p.

6   217:1-6.)

7   For its part, Advecor understood that it was not sending text messages directed at

8   California residents, and it understood Vertical Fitness was not attempting to solicit

9   business from residents of any state other than Minnesota and Wisconsin.  (**Exh. 5**, pp.

10   250:6-251:3.)

11   **III.  THE TELEPHONE CONSUMER PROTECTION ACT ("TCPA")**

12   **A.    The Primary Purpose Of The TCPA Was To Regulate Advertising By Phone And Fax Telemarketers Who Passed Part Of Their Costs To The Recipients.**

13

14   The TCPA was enacted into law on December 20, 1991 and codified as 47 U.S.C.

15   § 227.  Congress's clear intent in passing the TCPA was to "protect the privacy interests

16   of residential telephone subscribers" by placing restrictions on the use of unsolicited,

17   automated phone calls made by telemarketers who were "blasting" out advertising by

18   the use of "facsimile machines and automatic dialers." *See, e.g., Senate Report No. 102-*

19   *178*, October 8, 1991, 1991 U.S.C.C.A.N. 1968, at 1968.  The legislative history shows

20   the Legislators were responding to an "increasing number of consumer complaints"

21   regarding "telemarketing calls and communications." *Id.* at 1969.

22   **1.    Congress Sought To Minimize "Random" Calls Tying Up Private Phone Lines.**

23

24   In crafting the TCPA, Congress primarily sought to address and regulate

25   telemarketing calls being indiscriminately mass-broadcasted over telephone lines *where*

26   *the telemarketer had no existing relationship with the recipient*, and where the caller

27   ignores the recipients' privacy interest; Congress noted that "[h]aving an unlisted

28   number does not prevent those telemarketers that call numbers randomly or

1  sequentially." *Senate Report No. 102-178*, *supra*, 1991 U.S.C.C.A.N. at 1969.  Random

2  and indiscriminately dialed calls were tying up telephone lines, including those

3  "reserved for emergency purposes, such as hospitals and fire and police stations." *Id.*

4  Congress also intended the TCPA to address the problems created when automated

5  dialers dialed telephone numbers in sequence, "thereby tying up all the lines of a

6  business and preventing any outgoing calls." *Id.* at 1970.

7        **2.**     **Telemarketing Calls Were Considered An Invasion Of Privacy.**

8        In introducing the legislation, Senator Fritz Hollings, its sponsor, remarked that

9  indiscriminate calls are the "scourge of modern civilization. They wake us up in the

10  morning; they interrupt our dinner at night; they force the sick and elderly out of bed;

11  they hound us until we want to rip the telephone right out of the wall…These calls are a

12  nuisance and an invasion of our privacy." *Congressional Record – Senate Proceedings*

13  *and Debates of the 102nd Congress First Session*, July 11, 1991, 137 Cong. Rec. S9840-

14  02.

15        **3.**     **The TCPA Was Also Intended To Eliminate The Shifting Of**
16               **Advertising Costs To Recipients Of The Calls.**

17        A third factor considered by Congress related to the "cost shifting" incurred by

18  consumers when telemarketers who they had no prior relationship with sent unsolicited

19  advertisements to fax machines, causing the recipient to incur the cost of printing the

20  advertisement, or to cellular telephones, where the called party would incur a charge to

21  receive the call.  *See Senate Report No. 102-178*, *supra*, 1991 U.S.C.C.A.N. at 1969.

22        **4.**     **The TCPA Was Not Intended To Apply To Lawful Solicitations or**
23               **Calls Made With Prior Express Consent.**

24        Congress recognized that not all advertising calls should be deemed violations of

25  the TCPA. The Senate Report on the proposed TCPA noted that telemarketing

26  companies that do not use automatic dialers or other automated telephone equipment are

27  not affected by the TCPA. *Senate Report No. 102-178*, *supra*, 1991 U.S.C.C.A.N. at

28  1971.  In enacting the legislation, Congress also stated that automated calls to a

1   consumer were permitted if prior express consent for the recipient was provided. *Id.*

2   An additional report by the House of Representatives found that calls were not

3   telephone solicitations if "the called party has in essence requested the contact by

4   providing the caller with their telephone number for use in normal business

5   communications," and permitted such calls if the subscriber had given "prior express

6   permission or invitation." *House Report No. 102-317*, November 15, 1991, 1991 WL

7   245201 at *13.

8   **B.    The Provisions Of The TCPA Relevant To The Instant Case.**

9   In his first claim for relief, Van Patten alleges a violation of 47 U.S.C. section

10   227(b)(1)(A)(iii). (Dkt. #28, FAC, ¶ 39.) That section of the TCPA provides, in

11   relevant part:

> (b)    Restrictions On Use Of Automated Telephone Equipment
>    (1)    Prohibitions
>        ***It shall be unlawful*** for any person within the United States, or any person outside the United States if the recipient is within the United States –
>        (A)    ***to make any call[4] (other than a call*** made for emergency purposes or ***made with the prior express consent of the party called) using any automatic telephone dialing system or an artificial or prerecorded voice*** –
>            (iii)    ***to any telephone number assigned to a*** paging service, ***cellular telephone service***, specialized mobile radio service, or other radio common carrier service, ***or any service for which the called party is charged for the call***;

20   47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

21   The TCPA can be further simplified to its core prima facie elements: (1) a call

22   made to a cell phone; (2) using an automatic telephone dialing system or an artificial or

23   prerecorded voice; (3) without prior express consent; and (4) the called party was

24   charged for the call. **Meyer v. Portfolio Recovery Associates, LLC**, 707 F.3d 1036,

25   1043 (9th Cir. 2012) (stating elements of claim and confirming that lack of prior express

26   consent is an element of plaintiff's claim); **Osorio v. State Farm Bank, F.S.B.**, 859

---

[4] Under the 2003 FCC Order, a text message is a call. *See* **Exh. 9**, 2003 FCC Order, 18 FCC Rcd. at 14115 ¶ 165; accord **Satterfield**, *supra2*, 569 F.3d at 954.

1  F.Supp.2d 1326, 1329 (S.D. Fla. 2012); accord **Mims v. Arrow Financial Services,**

2  **LLC**, 132 S.Ct. 740, 745 (2012) (stating elements of TCPA claim).

3              IV.    **LEGAL ARGUMENT**

4  A.    **Standard For Summary Judgment.**

5        The rules related to summary judgment are well known and need not be reviewed

6  in detail here. Summary judgment is proper as to any claim or affirmative defense if the

7  "pleadings, depositions, answers to interrogatories, and admissions on file, together with

8  the affidavits, if any, show that there is no genuine issue as to any material fact and that

9  the moving party is entitled to a judgment as a matter of law." FRCP 56(c); **Celotex**

10  **Corp. v. Catrett**, 477 U.S. 317, 322 (1986); **Anderson v. Liberty Lobby, Inc.**, 477

11  U.S. 242, 255 (1986).

12       A plaintiff must offer more than conclusory allegations, unsupported by specific

13  facts, in order to establish a genuine issue of material fact. **Lujan v. National Wildlife**

14  **Fed'n**, 497 U.S. 871, 888 (1990).  And, a plaintiff may not rely upon the complaint's

15  allegations to defeat the motion. FRCP 56(e); **Celotex Corp.**, *supra*, 477 U.S. at 322-

16  325; **Brinson v. Linda Rose Joint Venture**, 53 F.3d 1044, 1049 (9th Cir. 1995).

17  B.    **Van Patten's First Cause Of Action Under the TCPA Is Subject to Partial**
       **Summary Judgment.**
18

19       In his complaint, Van Patten alleges that Vertical Fitness violated the TCPA when

20  he received two text messages on his cell phone in May and June of 2012.  However,

21  based on the undisputed facts, Van Patten's TCPA claim is subject to summary

22  adjudication.

23         1.    **Van Patten Provided Prior Express Consent To Be Contacted On His**
                **Cell Phone.**
24

25       A call made to a cell phone "with the prior express consent of the called party"

26  does not violate the TCPA.  47 U.S.C. § 227(b)(1)(A)(iii); **Exh. 8,** 1992 FCC Order, 7

27  FCC Rcd. at 8796 ¶ 31.  Pursuant to its rulemaking and interpretative authority under

28

                                    10

the TCPA[5], the FCC has ruled:

> [P]ersons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

**Exh. 8,** 1992 FCC Order, 7 FCC Rcd. at 8796 ¶ 31.

This definition of consent has been reaffirmed in subsequent FCC Orders. *See* **Exh. 10, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991**, 23 FCC Rcd. 559, 564, ¶ 9 (Jan. 4, 2008) ("2008 FCC Order") ("we conclude that the provision of a cellphone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent...")

Additionally, while in 2012 the FCC modified its earlier orders on prior express consent to require specific consent in writing, this more stringent requirement was made prospective; the new, more restrictive rule does not come into effect until October 16, 2013. *See* **Exh. 11, In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991**, 27 FCC Rcd. 1830, 1839 ¶ 24 and 1857 ¶ 66 (February 15, 2012) ("2012 FCC Order") (prior express consent is now required in writing, and it must be specific, but this written prior express consent requirement will have a twelve month waiting period for implementation from the date of publication by the Office of Management and Budget after approval in the Federal Registrar); **Exh. 12,** 77 Fed.Reg. 34233 (June 11, 2012) (FCC published prospective written consent rule); **Exh. 13,** 77 Fed.Reg. 63240 (Oct. 16, 2012) (date Office of Management and Budget approved the new rule). As such, the earlier 1992 FCC Order definition of prior express consent applies in this case to the text messages delivered in May and June 2012. *See* **Exh. 11,** 2012 FCC Order, 27 FCC Rcd. at 1833 ¶ 7, fn. 20.

Numerous cases have applied the 1992 FCC Order's definition of "prior express consent" when addressing issues of consent. For example, in **Pinkard v. Wal-Mart Stores, Inc.**, 2012 WL 5511039 (N.D. Ala. 2012), plaintiff visited a Wal-Mart

---

[5] *See* 47 U.S.C. § 227(b)(2).

pharmacy to fill her prescription. *Id.* at \*2. During the transaction, Wal-Mart employees asked plaintiff for several pieces of personal information, including her phone number. The plaintiff, in response, provided her cellphone number without restriction. *Id.* None of the employees, however, explicitly disclosed to or sought permission from the plaintiff for text messages to be sent. *Id.* Nevertheless, within hours of providing her cellphone number, plaintiff received a number of text messages from Wal-Mart. *Id.*

Plaintiff sued for violation of the TCPA. Applying the 1992 FCC Order, the court rejected the TCPA claim. The District Court found that because plaintiff "provided her telephone number to defendant at defendant's request," plaintiff provided "'clear and unmistakable' consent to be contacted at that number," and the court thereafter dismissed her claim. *Id.* at \*5-\*6. The court noted that "...distributing one's telephone number is an invitation to be called, especially when the number is given at another's request." *Id.* at \*5.

In **Emanuel v. Los Angeles Lakers, Inc.**, 2013 WL 1719035, \*3 (C.D. Cal. 2013), the court likewise cited the 1992 FCC Order and dismissed the TCPA claim there, "because Plaintiff voluntarily provided his number to the Lakers in requesting that his personal message appear on the Staples Center jumbotron, the Court would conclude that he consented to receiving a confirmatory text from the Lakers." *See also* **Roberts v. PayPal, Inc.** 2013 WL 2384242, \*4 (N.D. Cal. 2013) ("the court does find the reasoning of **Pinkard** [regarding prior express consent] persuasive, and adopts it here").

Because lack of prior express consent is an element of a TCPA violation, Van Patten must demonstrate that he did not give Vertical Fitness his consent to be contacted on his cell phone. **Meyer**, *supra*, 707 F.3d at 1043 ("[t]he elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.")

In the alternative, if the Court finds that prior express consent is an affirmative defense, a showing of consent from Van Patten will act as an affirmative defense to any violation of the TCPA. Some courts differ as to whether prior express consent is an

12

1   element to Plaintiff's *prima facie* case or an affirmative defense. <u>Compare</u>   **Emanuel**,

2   *supra*, 2013 WL 1719035, at \*2 (element); **Pimental v. Google Inc.**, 2012 WL 691784,

3   at \*2 (N.D. Cal 2012) (same) with **Connelly v. Hilton**, 2012 WL 2129364, at \*3 (S.D.

4   Cal. 2012) ("[w]hether Plaintiffs gave the required prior express consent is an

5   affirmative defense to be raised and proved by a TCPA defendant...").

6       But whether prior express consent is an element of Van Patten's prima facie case

7   or an affirmative defense, the undisputed facts show that Van Patten provided Vertical

8   Fitness prior express written consent to contact him on his cell phone by providing the

9   franchise with this cell phone number. **Pinkard**, *supra*, 2012 WL 5511039 at \*2 and \*5.

10  Partial summary judgment should be granted in favor of Vertical Fitness on Van

11  Patten's claim for violation of the TCPA, or alternatively, on Vertical Fitness's first

12  affirmative defense of "prior express consent." (*See* Dkt. #38, Vertical Fitness's

13  Answer to the FAC, ¶ 59.)

14      Here, it is undisputed that Van Patten provided his cellular telephone number

15  when signing up for his gym membership. (**Exh. 2**, at pp. 104:20-106:11, 117:1-118:16,

16  124:11-22; **Exh. 1**.) It was the practice of Vertical Fitness employees to ask prospective

17  gym members for their name, address, and phone number during the sign up process.

18  (**Exh. 3**, pp. 46:24-49:2, 54:9-18, 56:22-58:16.) As part of the script used to sign up new

19  members, employees would ask members "which number would you like to be

20  contacted at?" (**Exh. 4**, pp. 176:18-178:4.)  While signing up prospective members to

21  membership agreements, if there were any qualifications or limitations on the use of

22  phone numbers, Gold's Gym employees would document it; this process was invariably

23  the same for any qualification or limitation on telephone number use. (**Exh. 3**, pp.

24  84:15-88:2, 96:14-97:2.)

25      There is no evidence to contradict the undisputed fact that Van Patten voluntarily

26  provided his cellular phone number in writing to Gold's Gym as his "primary" number.

27  (**Exh. 2**, at pp. 104:20-106:11, 117:1-118:16, 124:11-22; **Exh. 3**, pp. 47:21-49:2, 59:22-

28  61:7, 84:15-88:2, 96:14-97:2.)  Mr. Van Patten does not recall making any restrictions.

1  Van Patten's membership agreement does not contain any restrictions on the face of his

2  agreement. (**Exh. 1.**) As such, Van Patten's voluntary distribution of his cell phone

3  number to the franchise was an invitation to be called at that number. **Exh. 8**, 1992 FCC

4  Order, 7 FCC Rcd, at 8796, p. 31; **Pinkard**, *supra*, 2012 WL 5511039 at *2 and *5.

5      The script Vertical Fitness's gyms used to sign up new members asked "which

6  number would you like to be contacted at?" (**Exh. 4**, pp. 176:18-178:4.)  In response to

7  this question, Van Patten provided his cell phone number as his "primary" number.

8  (**Exh. 2**, at pp. 104:20-106:11, 117:1-118:16, 124:11-22; **Exh. 3**, pp. 47:21-49:2, 59:22-

9  61:7, 84:15-88:2, 96:14-97:2.)  The phone number was given without caveat, and thus

10  evidences consent to be contacted on his cell phone no matter how the term "prior

11  express consent" is applied. *Id.*

12      Therefore, the court should find that Mr. Van Patten cannot show any facts

13  evidencing that any calls were made without prior express consent, an essential element

14  necessary for a TCPA cause of action (**Meyer**, *supra*, 707 F.3d at 1043), and grant

15  Vertical summary judgment as to the Van Patten's TCPA cause of action. **Pinkard**,

16  *supra*, 2012 WL 5511039 at *5. Alternatively, if the court finds that prior express

17  consent is an affirmative defense (**Connelly**, *supra*, 2012 WL 2129364, at *3), the

18  undisputed facts show that Vertical had Mr. Van Patten's prior express consent and the

19  court should grant summary judgment on Vertical's prior express consent defense.

20      **2.    Van Patten's TCPA Cause Of Action Also Fails Because Vertical
           Fitness Cannot Be Held Vicariously Liable For The Actions Of
21         Advecor.**

22      By its plain terms, the provision of the TCPA at issue here only makes it unlawful

23  for anyone "to **make** any call," without prior express consent, to a cell phone, using an

24  automatic telephone dialing system or an artificial or prerecorded voice.  The relevant

25  language of the statute is as follows:

26         It shall be unlawful for any person within the United States, or
           any person outside the United States if the recipient is within
27         the United States--

28

14

1
2
3

> (A) **to _make_ _any_ _call_** (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice...

4  47 U.S.C. § 227(b)(1)(A) (emphasis added).

5  A separate subsection of section 227 regarding the Do Not Call Registry imposes

6  liability for multiple calls made "**by _or on behalf of_**" a party. In that portion of the

7  TCPA, the statute states the following:

8
9
10

> A person who has received more than one telephone call within any 12-month period **_by_ _or on behalf of_** the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State...

11  47 U.S.C. § 227(c)(5) (emphasis added).

12  The Supreme Court has held that where Congress "includes particular language in

13  one section of a statute but omits it in another section of the same Act, it is generally

14  presumed that Congress acts intentionally and purposely in the disparate inclusion or

15  exclusion." **Russello v. U.S.**, 464 U.S. 16, 23 (1983). Indeed, several subsequent

16  Supreme Court cases have utilized this presumption. *See* **Corley v. U.S.**, 556 U.S. 303,

17  304 (2009) ("[t]he terms 'inadmissible' and 'involuntary' are not synonymous...and this

18  Court would not presume to ascribe this difference to a simple mistake in

19  draftsmanship") (citations omitted); **Barnhart v. Sigmon Coal Co., Inc.**, 534 U.S. 438,

20  440 (2002) ("[w]here Congress wanted to provide for successor liability in the Coal Act,

21  it did so explicitly..."); **U.S. v. Gonzales**, 520 U.S. 1, 5 (1997) ("[g]iven that Congress

22  expressly limited the phrase 'any crime' to only federal crimes, we find it significant

23  that no similar restriction modifies the phrase 'any other term of imprisonment,' which

24  appears only two sentences later and is at issue in this case").

25  Consequently, the absence of "on behalf of" language in section 227(b)(1)(A) is

26  significant. Section 227(c)(5) includes this language, and permits "on behalf of"

27  liability. The absence of "on behalf of" language in section 227(b)(1)(A) creates a

28  presumption that Congress did not intend for vicarious liability to apply with respect to

15

1 that subsection. *See* **Russelo**, *supra*, 464 U.S. at 23; **Barnhart**, *supra*, 534 U.S. at 440.

2 Congress did not make a "mistake;" it did not intend for a company such as Vertical

3 Fitness to be vicariously liable for an alleged TCPA violation committed by someone

4 else (i.e., Advecor). This must be seen as deliberate. **Russelo**, *supra*, 464 U.S. at 23.

5 Courts have noted the difference in language between the two sections of the TCPA and

6 found there is no "on behalf of" liability for defendants under section 227(b)(1)(A). *See*

7 **Mey v. Pinnacle Sec., LLC**, 2012 WL 4009718, at *3-*4 (N.D. W.Va. 2012); **Thomas**

8 **v. Taco Bell Corp.**, 879 F.Supp.2d 1079, 1084 (C.D. Cal. 2012).

9      The Southern District of Florida recently conducted a thorough statutory analysis

10 of these sections of the TCPA and reached the same conclusion. In **Mais v. Gulf Coast**

11 **Collection Bureau, Inc.**, 2013 WL 1899616, at *13 (S.D. Fla. 2013), the court found

12 the TCPA *does not* permit vicarious liability under section 227(b)(1)(A) by virtue of the

13 TCPA's plain language and structure, and refused to extend common law vicarious

14 liability to section 227(b) of the TCPA:

15         Even while recognizing that Congress must not have intended
16 such liability for violations of section 227(b), some of those courts have found it appropriate to also consider whether a
17 defendant may nonetheless be held vicariously liable under traditional tort principles. Those other courts apparently felt compelled to do so by **Meyer v. Holley**, 537 U.S. 280, 286-87
18 (2003), wherein the Supreme Court stated that "when Congress creates a tort action, it legislates against a legal background of
19 ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules," absent any
20 contrary indications. That rule is fine as far as it goes, but the Court does not see how it can apply where, as here, ***Congress***
21 ***has specifically provided for vicarious liability in one part of the statute, but not in the other***.

22         In **Meyer**, the Supreme Court considered legislation, the Fair
23 Housing Act, that was altogether silent on whether vicarious liability could be imposed. In that context, it makes sense to
24 turn to traditional vicarious liability rules, which we presume Congress did not intend to supplant absent it saying so. ***But***
25 ***because Congress here made a choice about where vicarious liability ought to be imposed, this Court should not go to the***
26 ***common law to alter Congress's choice***.

27 **Mais**, *supra*, 2013 WL 1899616 at *12 (emphasis added) (citations omitted).

28      The FCC stated in its 2008 Order that "[c]alls placed by a third party collector on

16

1  behalf of that creditor are treated as if the creditor itself placed the call" (*see* **Exh. 10**,

2  2008 FCC Order, 23 FCC Rcd. at 565 ¶ 10).  But the court in **Mais** convincingly

3  demonstrated why vicarious liability cannot be read into section 227(b) in the manner

4  suggested by the FCC:

> Turning to the analysis under **Chevron [Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,** 467 U.S. 837, 842-843 (1984)]** step one, the Court finds that Congress has again directly spoken on the issue. As just outlined, Congress chose to employ ***"on behalf of" liability*** under one part of the statute, but not under the provision relevant in this case, section 227(b)(1)(A). ***There, Congress chose to provide liability only for those who "make" calls in violation of the TCPA.*** Where the court finds that the statute is clear, as it does here, no deference is accorded to the agency's interpretation. With respect to section 227(b)(1)(A), the FCC has provided for vicarious liability where Congress did not. The FCC cites no authority or support for its determination that creditors are liable for calls placed by third-party debt collectors and, for the reasons above, that ruling appears inconsistent with the statutory scheme. Therefore, the court will not defer to the FCC's determination. ***Instead, it will employ the statute as written and find that only those who make calls in violation of section 227(b)(1)(A) may be held liable.*** Because neither Sheridan nor Florida United made any calls to the Plaintiff, the Court finds they are entitled to summary judgment.

16  **Mais**, *supra*, 2013 WL 1899616 at *13 (emphasis added) (citations omitted) (citations

17  added).

18          As **Mais** correctly recognized, the FCC cannot unilaterally disregard the wishes

19  of Congress and read vicarious liability into the TCPA as a whole when the plain

20  language that Congress enacted into law only permits vicarious liability under certain

21  portions of the statute but not others. Thus, while a recent FCC Order issued in May

22  2013 has repeated the FCC's position that vicarious liability exists,[6] this interpretation

23  should not be accorded "**Chevron**" deference. *See* **Chevron**, *supra*, 467 U.S. at 842-

24  843.

25          Here, it was established during the deposition of Advecor employee Ryan Popek

---

26  [6] *See* **In the Matter of The Joint Petition Filed By Dish Network, LLC, The United

27  States of America, and The States of California, Illinois, North Carolina, and Ohio for Declaratory Ruling Concerning The Telephone Consumer Protection Act

28  Rules**, 28 FCC Rcd. 6574, 6586 ¶ 33 (May 9, 2013).

1    that it was Advecor that caused the messages in question to be sent, not Vertical Fitness.

2    (**Exh. 5**, p. 31.)  Vertical Fitness did not control the method and means Advecor

3    utilized to send the text messages in question.  (**Exh. 4**, at pp. 18:7-20:1, 21:16-23,

4    67:11-70:25, 136:13-137:12, 162:14-19, 221:1-21, 223:19-21.)  Vertical Fitness should

5    not be liable for the texts sent by Advecor.  Advecor acted as an independent contractor,

6    and not Vertical's agent. Liability should only be imposed pursuant to section 227(b)

7    against those to *make* the call in question.  **Exh. 4**, at pp. 221:1-21; **Mais**, *supra*, 2013

8    WL 1899616, at *11-12.

9    **C.      Van Patten's Second Cause Of Action For Violation Of Business &**
         **Professions Code Section 17538.41 Fails As A Matter Of Law Because**
10       **Vertical Fitness Does Not Conduct Business in California.**

11            Business & Professions Code section 17538.41 provides, in relevant part:

12                 No person, ***entity conducting business***, candidate or political
                 committee ***in this state*** shall transmit, or cause to be
13               transmitted, a text message advertisement to a mobile telephony
                 services handset, pager, or two-way messaging device that is
14               equipped with short message capability or any similar
                 capability allowing the transmission of text messages.

15    Bus. & Prof. Code § 17538.41(a)(1) (emphasis added).

16            The necessary elements for a Business & Professions Code section 17538.41

17    violation are: (1) ***an entity conducting business in California***; (2) the entity transmits or

18    causes to be transmitted; (3) a text message advertisement; (4) to a cell phone, pager, or

19    two-way messaging device.  Bus. & Prof. Code § 17538.41(a)(1).

20            A view of the history of section 17538.41 highlights the legislative intent that

21    businesses sued under the section *must* be conducting business within California. *See*

22    Assem. Bill No. 582 (2005-2006 Reg. Sess.) § 711 ("Existing law, subject to certain

23    exceptions, generally prohibits a person or ***entity conducting business in this state*** from

24    transmitting or causing to be transmitted a text message advertisement…This bill

25    would, subject to certain exceptions, generally prohibit a person, ***entity conducting***

26    ***business***, candidate, or political committee ***in this state*** from transmitting, or causing to

27    be transmitted, a text message advertisement…") (emphasis added).

28            Here, there are absolutely no facts that show Vertical Fitness conducts any

                                            18

1   business, intentionally or otherwise, in California.  Rather, the undisputed facts

2   demonstrate that Vertical Fitness conducts business only in Wisconsin and Minnesota,

3   as its gyms are only located in those two states. (**Exh. 4,** at pp. 16:16-19, 215:9-216:15,

4   224:2-15; **Exh. 5,** at pp. 249:7-251:3.)  Mr. Barton, Vertical Fitness's CEO, confirmed

5   that the text messages Van Patten received targeted only residents in Wisconsin and

6   Minnesota. (**Exh. 4,** at pp. 16:16-19, 215:9-216:15, 224:2-15.)  Van Patten only

7   received the text messages because he still retained his Wisconsin cell phone number

8   when he moved to California. (**Exh. 2,** at pp. 12:8-9, 19:8-12, 29:21-31:4; **Exh. 4,** at pp.

9   216:21-217:6, 224:16-25, 225:22-226:11.)

10          Therefore, the Court should find that Vertical Fitness is entitled to summary

11   judgment as to Van Patten's section 17538.41 claim as Vertical Fitness did not conduct

12   or attempt to conduct any business in this state.

13   **D.   Van Patten's Third Cause Of Action Under The Unfair Competition Law, Business & Professions Code Section 17200, Fails Because Vertical Fitness Did Not Engage In Any Unlawful Or Unfair Conduct, And Van Patten Did Not Suffer An "Injury In Fact."**

16          Business and Professions Code section 17200 prohibits five different types of

17   wrongful conduct: (1) an *unlawful* business act or practice; (2) an *unfair* business act or

18   practice; (3) a *fraudulent* business act or practice; (4) unfair, deceptive, untrue or

19   misleading *advertising*; and (5) any act prohibited by Business & Professions Code

20   sections 17500-17577.5.  Bus. & Prof. Code § 17200 (emphasis added).

21          Here, Van Patten has alleged that Vertical Fitness violated section 17200. (Dkt.

22   #28, FAC, p. 12 ¶¶ 50-52.)  As discussed below, these claims have no merit.

23   **1.   There Are No Facts That Show Vertical Fitness Committed "Unlawful" Or "Unfair" Business Practices.**

25          The "unlawful" business activities proscribed under section 17200 have been

26   found by the California Supreme Court to include "anything that can properly be called

27   a business practice and that at the same time is forbidden by law." **Farmers Ins.**

28   **Exchange v. Superior Court**, 2 Cal.4th 377, 491 (1992). In essence, an action based on

19

1   section 17200 to remedy unlawful business practices "borrows violations of other laws

2   and treats these violations, when committed pursuant to business activity, as unlawful

3   practices inherently actionable under section 17200 *et seq.* and subject to distinct

4   remedies provided thereunder." *Id.*

5          But courts have held that if the "borrowed" violation fails, a section 17200 claim

6   based on "unlawful" or "unfair" business practices must fail as well. *See* **Renick v. Dun**

7   **& Bradstreet Receivable Mgmt. Servs.**, 290 F.3d 1055, 1057-1058 (9th Cir. 2002)

8   (granting summary judgment on section 17200 claim after finding dunning notice to

9   debtor did not violate the Fair Debt Collection Practices Act); **Boorstein v. Men's**

10  **Journal LLC**, 2012 WL 2152815, at *5 (C.D. Cal. 2012) (granting motion to dismiss

11  section 17200 claim when underlying "Shine the Light" claim was dismissed).  In other

12  words, if the predicate statute or rule was never violated in the first place, the foundation

13  upon which the UCL claim is based necessarily collapses and the UCL claim must also

14  be dismissed. *Id.*

15         Here, Van Patten "borrows" the violations of the TCPA and Business &

16  Professions Code section 17538.41 and argues that these violations are also violations of

17  section 17200.  (Dkt. #28, FAC, ¶ 50.)  Thus if the Court finds Vertical Fitness is

18  entitled to summary judgment for both the TCPA claim and the section 17538.41 claim,

19  then the Court must also find that no unlawful acts or practices were conducted by

20  Vertical Fitness and grant summary judgment as to Van Patten's section 17200 claim.

21  **Renick**, *supra*, 290 F.3d at 1057-1058.

22         **2.     Van Patten's UCL Cause Of Action Also Fails Because He Did Not
              Suffer An "Injury In Fact" Or Lose "Money Or Property" As**
23            **Required By Business and Professions Code Section 17204.**

24         Business & Professions Code section 17204 limits standing to sue under section

25  17200 to "a person who has suffered *injury in fact* and has *lost money or property* as a

26  result of such unfair competition." Bus. & Prof. Code § 17204 (emphasis added).

27         In **Kwikset Corp. v. Superior Court**, 51 Cal.4th 310 (2011), the California

28  Supreme Court determined that in many instances, "injury in fact" will overlap with the

20

1  second element of "lost money or property" and proving "a personal, individualized loss

2  of money or property in any ***nontrivial amount***, he or she has also [proven] injury in

3  fact." *Id.* at 323 and 325 (emphasis added).

4       Turning to "lost money or property," the court determined that "the plain import

5  of this is that a plaintiff must demonstrate some form of economic injury," which is

6  "substantially narrower than federal standing under Article III, section 2 of the United

7  States Constitution, which may be predicated on a broader range of injuries." *Id.* at 323-

8  324. The court listed several examples of lost money or property, such as "(1)

9  surrender[ing] in a transaction more, or acquir[ing] in a transaction less, than he or she

10  otherwise would have; (2) have a present or future property interest diminished; (3) be

11  deprived of money or property to which he or she has a cognizable claim; or (4) be

12  required to enter into a transaction, costing money or property, that would have

13  otherwise been unnecessary." *Id.* at 323. Several Federal District Courts have relied

14  upon the **Kwikset**'s interpretation of section 17204 when analyzing Business &

15  Professions Code claims. *See* **In re Sony Gaming Networks and Customer Data Sec.**

16  **Breach Litigation**, 903 F.Supp.2d 942, 966 (S.D. Cal. 2012) (citing **Kwikset** to

17  determine that Plaintiffs' claims of diminution in value of their consoles and/or loss of

18  use of prepaid Third-Party Services fail to establish a "loss of money or property" as

19  "none of the named Class members assert their consoles are somehow defective after

20  [Sony's gaming network] was restored, nor do any Class members assert they value

21  their consoles less as a result of the Data Breach" and dismissing plaintiffs' UCL

22  claim); **Marzette v. Provident Sav. Bank, F.S.B.**, 2011 WL 5513682, *3 (E.D. Cal.

23  2011) (citing **Kwikset** in determining plaintiff did not allege a sufficient injury

24  conferring UCL standing).

25       Van Patten cannot satisfy this standing or injury in fact requirement under the

26  UCL. He simply did not lose money or property as a result of receiving the two text

27  messages at issue.  Since Van Patten was not charged anything extra on his pre-paid cell

28  phone plan for the two messages he received, he cannot show a non-trivial "economic

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT [FRCP 56]

1  injury" or loss as a result of defendants' conduct. (*See* **Exh. 2,** p. 76:8-18; **Kwikset,**
2  *supra,* 51 Cal.4th at 323.) The undisputed facts show that Van Patten did not suffer any
3  actual injury in fact.

4      Rather, Van Patten admitted he did not suffer any injury in fact. (**Exh. 2** at pp. 70-
5  72). Van Patten's phone bill demonstrates he did not incur any charges for the text
6  messages he received from Advecor. (**Exh. 2,** at pp. 67:8-71:22, 73:9-76:18; **Exh. 6,** at
7  pp. 15 and 27.) Van Patten also admitted at his deposition that he did not suffer any
8  emotional distress (**Exh. 2,** at pp. 60:15-19, 72:20-73:7).  Overall, Van Patten conceded
9  he did not suffer any actual injury, or any continuing injury. (**Exh. 2,** at pp. 70:4-71:22,
10  72:7-18, 95:11-23, 103:3-10.)  Because no monetary harm was suffered by Van Patten,
11  he seeks statutory damages. *Id*.

12      Van Patten does not have standing under the UCL as he has suffered no injury in
13  fact. (**Kwikset,** *supra*, 51 Cal.4th at 323.)

## V.    CONCLUSION

14
15      Based on the foregoing, the Court should grant this motion and enter judgment in
16  Vertical Fitness's favor, or, in the alternative, grant partial summary judgment on each
17  discrete claim under the TCPA and the Business & Professions Code.

18
19  Dated: September 9, 2013

20                    ELLIS LAW GROUP, LLP

21                    By

22                       Mark E. Ellis
                        Attorney for Defendant
23                     VERTICAL FITNESS GROUP, LLC

24
25
26
27
28

22

**CERTIFICATE OF SERVICE**

I, Jennifer E. Mueller, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 740 University Avenue, Suite 100, Sacramento, CA 95825.

On September 9, 2013, I served the following document(s) on the parties in the within action:

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

| X | **VIA ELECTRONIC SERVICE:** The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |
|---|---|

| | |
|---|---|
| George Rikos<br>The Law Office of George Rikos<br>225 Broadway, Suite 2100<br>San Diego, CA 92101 | Attorneys for<br>PLAINTIFF BRADLEY VAN PATTEN |
| Alex M. Tomasevic<br>Craig Nicholas<br>Nicholas & Butler, LLP<br>225 Broadway, 19th Floor<br>San Diego, CA 92101 | Attorneys for<br>PLAINTIFF BRADLEY VAN PATTEN |
| Gregory M. Garrison<br>TEEPLE HALL, LLP<br>9255 Towne Center Dr., Ste. 500<br>San Diego, CA 92121 | Attorneys for<br>DEFENDANT ADVECOR, INC. |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on September 9, 2013.

By _____
Jennifer E. Mueller

23